PALMER v. HALLOCK.

(Supreme Court, Appellate Division, Third Department. May 11, 1904.)

1. ANTENUPTIAL AGREEMENT—RIGHT OF HUSBAND ON DEATH OF WIFE.

Under an antenuptial agreement by which T. agreed to pay H. $500, and H. agreed to receive it in consideration of her surrender of all dower and marital rights in T.'s property, and agreed that at her death any of the money then remaining should be paid back to T. or his heirs, H. became the absolute owner of the money, and any right of T. or his heirs to recover it rests solely on her promise, and not on any limitation of its use, or any trust, so that at her death, it being necessary for payment of her debts, T. or his heirs have no claim on account thereof.

Appeal from Special Term.

Action by Lois Ann Palmer, sole surviving heir at law of Abraham Travis, deceased, against Leander W. Hallock, executor of Belzora Travis, deceased. Judgment for plaintiff. Defendant appeals. Reversed.

Abraham Travis and Belzora Hallock, being about to marry, entered into a written antenuptial agreement under their hands and seals, and bearing date October 27, 1859, whereby, in consideration of the marriage, Travis agreed on his part to pay to her the sum of $500, and she, on her part, agreed to receive the same "as her jointure and in lieu and satisfaction of her whole dower in his estate forever"; "and it is further agreed between the respective parties, that is to say, viz., at the death of Belzora Hallock, the party of the second part, that the remainder of the money, if any then be left, that the said Belzora Hallock, the party of the second part, received from Abraham Travis, the party of the first part, at the making and delivery of the agreement, shall be paid back to Abraham Travis or his heirs." The $500 was paid and the marriage then solemnized. The parties lived together as husband and wife for many years, and Travis then died. Subsequently, on April 9, 1902, she died, leaving a last will and testament, of which this defendant is the executor. It appears from the evidence, very clearly, that such $500 was invested by said Belzora Travis, and kept invested down to the time of her death, in bond and mortgage or other securities. At that date it was invested in a bond and mortgage against one Charles D. Hallock for $3,500, but upon which there was then due and owing the sum of $1,000 only. The evidence clearly establishes that she, at the time of her death, understood and intended that such $1,000 included the $500 so paid her under the agreement aforesaid. Such bond and mortgage passed into the custody and control of this defendant as her executor, and he holds it as part of the assets of her estate. The defendant shows that the total assets of Mrs. Travis' estate, including the $1,000 unpaid upon said bond and mortgage, are $1,800, and that $600 of that consists of a judgment upon which execution has been returned unsatisfied, and which probably can never be collected. He also testified that the claims presented against her estate, in addition to the plaintiff's claim, were $1,400, or thereabouts. No other evidence as to the amount of such indebtedness is before us. Upon her death this plaintiff, who is the only heir at law of said Travis, demanded of the defendant payment of the $500 so left by the deceased, Mrs.

Travis, and such payment was refused. The plaintiff thereupon brought this action to recover such sum, and asks that it be decreed a charge and first lien on Mrs. Travis' estate. The court below rendered judgment that the defendant held in his hands the sum of $500, which was received by Belzora Hallock under the antenuptial agreement, and "to which specific sum the plaintiff is entitled," and decreed that the defendant pay the plaintiff the full sum thereof, with $27.83 interest accrued thereon from December 6, 1902. Such interest is charged against the defendant personally. Costs are also given against the defendant. From such judgment the defendant appeals to this court.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

N. A. Calkins, for appellant.
D. H. Daley, for respondent.

PARKER, P. J. It seems clear that under the antenuptial agreement aforesaid Belzora Hallock became the absolute owner of the $500 which was paid to her by Travis. There is no reservation of that sum, or any part of it, by the terms of the agreement; nor is there any limitation, by its terms, as to the use to which she must put such money. It was paid to her as the consideration for her surrender of all dower and marital rights in Travis' property, and she was under no obligations whatever to refrain from expending it at once, or from applying it to whatever purpose she desired. There was no trust created by such agreement. There was an executory contract on her part that as to such portion of the $500 as should remain unexpended at the time of her death it should be paid over to said Travis or to his heir, but the right to recover such portion rested solely upon her promise, not upon any limitation of its use, nor upon any trust assumed by her concerning the same. Concede, for the sake of the argument, that as to so much of such $500 as remained unexpended a cause of action arose against her estate upon such promise, but I am at a loss to discover upon what theory Travis, or his heir, can claim preference over her other creditors in the enforcement of such claim. It is a well-settled rule of equity that:

"Where the defendant himself has a right to sell his interest in the trust fund in anticipation, and to use the proceeds of such sale as he pleases, equity requires that he should appropriate it to the payment of his honest debts; and he must assign such interest to the receiver in a creditors' suit. The owner of real or personal estate may create an interest in the rents and profits, or the income thereof, under the provisions of the Revised Statutes, in trust for the use or benefit of a third person, whom from improvidence or otherwise the donor does not think proper to intrust with the absolute disposition and control of his beneficial interest in the trust property, by anticipation. But neither law nor sound policy will allow an absolute and unconditional right to property to be vested in a person, which he may use and dispose of as he pleases, by anticipation or otherwise, but in relation to which property he may set his creditors at defiance by means of a mere nominal trust." Degraw v. Clason, 11 Paige, 136, 140.

See, also, Hallet v. Thompson, 5 Paige, 583; Wetmore v. Truslow, 51 N. Y. 338, 342.

In no event, therefore, could the parties, by any form of agreement which made Mrs. Travis the absolute owner of such $500, so control the disposition of any part of it after her death as to prevent its application to the payment of her debts. If at the time of her death the whole

$500 was necessary for the payment of her debts, then it should not be considered that there was any remainder left unexpended by her. The whole fund having once become absolutely hers, became absolutely subject to the claims of her creditors, and the right which they had to reach it prior to her death followed it in the hands of her executor after her death. In other words, so far as creditors are concerned, such $500 became and was assets of her estate, and her executor was accountable to her creditors for the same. This conclusion seems to follow from the well-settled rule of equity above quoted, and the judgment rendered herein is clearly in conflict with it. Upon the record before us the question is one presented between the plaintiff and the creditors of Mrs. Travis, deceased. The executor claims that the $500 is needed to pay Mrs. Travis' debts, and, so far as the evidence discloses, it will be so needed. The trial court has decreed, in substance, that such $500 was not assets of Mrs. Travis, but was the property of this plaintiff. Such conclusion was error, and for that reason the judgment must be reversed.

Judgment reversed, and new trial granted; costs to the appellant to abide the event. All concur.